RECEIVED
MAR 1 9 2014
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOUI

| | |
|---|---|
| ALAA ALMOGHRABI,<br>          **Plaintiff,** | )<br>)<br>) |
| | ) |
| **v.** | ) |
| | ) |
| **GOJET AIRLINES, LLC,** | ) |
| Serve R/A: C T Corporation System | ) |
| 120 South Central Ave. | ) |
| Clayton MO 63105, | ) |
| | ) |
| **and** | ) |
| | ) |
| **INTERNATIONAL BROTHERHOOD OF** | ) |
| **TEAMSTERS – LOCAL 618,** | ) |
| 9040 Lackland Road | ) |
| St. Louis, Missouri 63114 | ) |
| | ) |
|           **Defendants.** | ) |

4:14CV0000507AGF

Cause No. _____
**JURY TRIAL DEMANDED**

## COMPLAINT

**COMES NOW**, plaintiff Alaa Almoghrabi ("Plaintiff") by and through his attorney, Jonathan D. McDowell, and for his claim for relief against Defendants, states and alleges as follows:

### DEMAND FOR JURY TRIAL

1. Plaintiff demands a jury trial pursuant to Fed. R. Civ. P. 39.

### INTRODUCTION

2. This is an action to remedy an illegal termination based on race and religion discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Missouri Human Rights Act ("MHRA"), codified in *Revised Statutes of Missouri* ("RSMo") § 213.010 *et seq.*, arising from Plaintiff's employment as Captain for Defendants.

1

## JURISDICTION AND VENUE

3.     This Court has jurisdiction of Plaintiff's Age Title VII claim pursuant to 28 U.S.C. §§1331 and 1332. This Court has jurisdiction of Plaintiff's Missouri Human Rights Act (MHRA) claims pursuant to 28 U.S.C. §1367 because the MHRA claims are so related to his federal claims that they form part of the same case or controversy under Article III of the United States Constitution

4.     This Court has jurisdiction over Defendants GoJet Airlines, LLC ("GoJet") and the International Brotherhood of Teamsters Union ("IBT") because both defendants conduct business in Saint Louis County, Missouri, which lies within the district of the United States District Court for the Eastern District of Missouri. In addition, both defendants have minimum contacts with United States District Court for the Eastern District of Missouri.

5.     Venue is proper under 28 U.S.C. § 1391(b)(3) as Defendants GoJet and IBT conduct business in Saint Louis County, Missouri which lies within the United States District Court for the Eastern District of Missouri.

## PARTIES

6.     Plaintiff is a thirty-three (33) year old Jordanian Muslim individual who has worked at GoJet for five years. Plaintiff's last position was as a pilot classified as Captain. Plaintiff was terminated on October 16, 2012 by Chief Pilot Dennis Craig. His final rate of pay was $71.21 per hour.

7.     Separate Defendant GoJet is a for-profit Delaware Corporation with a foreign registration in Missouri of FL0981741, and its principle place of business at 11495 Navaid Road, Suite 303, Bridgeton, Missouri 63044. Registered agent, C T Corporation System, can be served

at 120 South Central Avenue, Clayton, Missouri 63105. Separate Defendant GE is an employer, as defined in RSMo § 213.010 (7).

8.      Separate Defendant IBT is a local St. Louis union that represented pilots on behalf of the teamsters in negotiations and working conditions with GoJet. The relationship between GoJet and IBT is governed by a collective bargaining agreement ("CBA").

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

9.      Plaintiff was hired by Defendants on November 15, 2007, to perform the role of pilot as a First Officer. Plaintiff eventually attained the rank of Captain.

10.     As Captain, Plaintiff supervised a First Officer and flight crew on flights.

11.     Plaintiff was scheduled to fly, a Captain, a trip that started on October 6, 2012 through October 8, 2012.

12.     On October 6, 2012, Plaintiff and crew flew to aiport call signs ORD-BOI-DEN-BZN. On October 7, 2012, Plaintiff and crew flew to aiport call signs BZN-ORD-YYZ. On September 8, 2012, Plaintiff and Crew flew to airport call signs, YYZ-JAX for a layover in Jacksonville, Florida.

13.     The crew consisted of: Captain, Alaa Almoghrabi; First Officer, Byron Hernandez; Flight Attendant, Laura Carpeneto; and Flight Attendant, Brianna Cummings.

14.     This was the third trip that Plaintiff and First Officer Hernandez had flown together.

15.     Plaintiff and crew landed at JAX in Jacksonville, FL, at approximately 10:30 a.m.

16.     After traveling to their hotel, the crew met in the hotel at roughly 11:30 a. m. to have lunch.

17.     The hotel van shuttled the crew to "747," a bar near the hotel. After having a

3

drink at "747," the crew took a cab to downtown Jacksonville.

18.     The crew was downtown around 3:00 p. m. and had lunch.

19.     The crew was enjoying themselves with laughter and camaraderie. Plaintiff and First Officer Hernandez were continuing their friendly and professional relationship. The flight attendants commented on how close Plaintiff and Hernandez seemed.

20.     At around 4:30 p. m., the crew went outside to call a cab to head back to the hotel to prepare for the next day's flight. The crew sat and waited on concrete steps until the taxi cab was called and arrived.

21.     Hernandez called a cab and spoke gibberish loudly into the telephone.     The gibberish was intended to sound Arabic. The person on the other end of the conversation hung up.

22.     Hernandez then turned to Plaintiff and asked, "Is that how you speak? Is that what Arab people say? He didn't understand me; I spoke your language."

23.     Hernandez sat next to Plaintiff on the steps and said, "Look at you. Who dresses like that? You are wearing a tight shirt. Are you trying to scare me? Are you showing your man boobs? Look at your jeans, shirt, and shoes. Your socks don't even match."

24.     Hernandez began speaking in gibberish to sound like Arabic to Plaintiff.

25.     Plaintiff warned Hernandez that he was getting upset. Plaintiff put his arm around Hernandez's shoulder and said, "Cut it out man, that's not funny."

26.     Hernandez replied, "What are you trying do to? Do you want me to get close to your penis? I know you would probably like that but I'm not going to do it." Hernandez lowered his sunglasses to the bridge of his nose, moved towards Plaintiff and challenged, "What are you going to do about it big boy? What are you gonna do, huh?" The flight attendants were

4

laughing.

27.     Plaintiff, being humiliated, embarrassed, and threatened, grabbed Hernandez's shirt collar and pushed him away. Hernandez fell backward into a wall behind him.

28.     The flight attendants attempted to deescalate the situation. At that point the cab arrived.

29.     Plaintiff sat in the front seat. Plaintiff reminded Hernandez that he was his captain.

30.     At their destination, Hernandez offered to pay for the cab ride.

31.     Each person went to their rooms with no additional problems or altercation.

32.     On October 9, 2012, the crew met at 5:00 a. m. to meet their flight check deadline. Hernandez and Plaintiff were respectful and professional to each other.

33.     According to GoJet General Operations Manual, Chapter 3, section 3-3.2.3.19 – Duty Times, a crewmember's duty  of "overnight stations begins 45 minutes before scheduled departure at the gate their flight is scheduled and ends 15 minutes after the time of block-in upon completion of the day's scheduled flight(s)."

34.     Plaintiff and crew were not on duty during the incident.

35.     When Plaintiff and crew arrived for preflight checks, Plaintiff noticed the hydraulic fluid was low and called GoJet maintenance. The repair took approximately an hour.

36.     During the hour, First Officer Hernandez made and received phone calls, stepping outside of the plane each time. Hernandez was laughing and speaking with the flight attendants.

37.     Plaintiff and Hernandez performed the preflight checks professionally and timely. Hernandez flew the leg from Jacksonville to Chicago.

38.     During the flight, Plaintiff and Hernandez discussed the incident from the day

5

before. Hernandez expressed his like of Plaintiff and Plaintiff apologized.

39.     Hernandez informed Plaintiff that Hernandez called GoJet and reported fatigue. The company asked why he had fatigue with a nineteen hour layover. Hernandez stated that he did not sleep the night before, was sad about the day before, and the flight attendants acted like everything was okay seemingly careless about Hernandez.

40.     Hernandez also reported that his girlfriend, a flight attendant for ExpressJet, called GoJet to indicate it was unsafe for Plaintiff and Hernandez to fly together.

41.     Hernandez was in his probationary period.

42.     Plaintiff and crew landed the plane at Chicago. Hernandez and Plaintiff shook hands and left each other professionally. Plaintiff had two more flights that day.

43.     Plaintiff received a telephone call from GoJet Chief Pilot Dennis Craig on October 9, 2012, to meet with him as soon as possible. When they ended their conversation, Plaintiff received a phone call from Chris Slavens, the IBT union representative. Slavens offered to be there at the meeting with Chief Pilot Craig and Plaintiff.

44.     Plaintiff, Craig, and Slavens met on October 10, 2012, at 1:00 p. m. in Craig's office. Plaintiff reported the incident in Jacksonville.

45.     On October 17, 2012, around 5:30 p. m., Plaintiff received a phone call from Craig informing Plaintiff that he was terminated effective immediately.

46.     Plaintiff called Slavens and requested a Pilot's hearing. Slavens referred Plaintiff to Mike Foster, the IBT Local 618 President.

47.     Plaintiff attended a pilot's hearing along with Slavens and Foster. Plaintiff explained the incident in Jacksonville, his humiliation, and his termination. Neither representative said a word.

48.     Plaintiff received a letter on October 26, 2012, informing him the decision of GoJet was confirmed.

49.     On November 2, 2012, Plaintiff called the union to file a grievance. Slavens and Foster informed Plaintiff that religion, culture, accent, race, or threatening behavior was inconsequential to the IBT of GoJet, and what mattered was that Plaintiff had pushed Hernandez. Neither Slavens nor Foster indicated a grievance could not be filed.

50.     Plaintiff received a letter from Foster denied his request for a grievance.

51.     Plaintiff paid his dues from the time he became employed at GoJet to and through his termination.

52.     Plaintiff timely filed a written complaint of discrimination with Missouri Commission on Human Rights ("MCHR") and Equal Employment Opportunity Commission ("EEOC"). He received a Right-to-Sue ("RTS") letter on December 19, 2013.

53.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## COUNT I – DISCRIMINATION UNDER TITLE VII BY GOJET

Plaintiff incorporates, by reference, each and every allegation set forth in every preceding paragraph and states further:

54.     Plaintiff is a Jordanian Muslim.

55.     Plaintiff was a Captain with five years employment experience at GoJet and had seniority over probationary employee Byron Hernandez.

56.     Plaintiff was terminated for an incident, while off company premises or property, while off-duty, in which he was subjected to extreme, insulting, and deliberately provocative taunts about his race, ethnicity, the clothes he was wearing, and his sexuality.

57.     Plaintiff was acting outside of the course and scope of his employment.

58.     GoJet did not take into consideration the racial and religious humiliation when terminating an employee with no record of warnings for conduct.

59.     Plaintiff's race, religion, color, and national origin was a contributing factor in Defendants' discrimination against Plaintiff in that his compensation, terms, conditions, or privileges of employment, were terminated.

60.     Plaintiff's race, religion, color, and national origin was a contributing factor in that Defendants' have limited, segregated, or classified Plaintiff and have deprived or tended to have deprived Plaintiff of employment opportunities or otherwise adversely affected his status as an employee by terminating him without cause.

61.     Plaintiff is a member of a protected class and at all times during this action performed his tasks in a manner that met Defendants' expectations. Plaintiff has been segregated, isolated, and classified separately by Defendants due to his race, religion, color, and national origin.

**WHEREFORE**, Plaintiff prays for damages in the form of back pay in the amount of eleven thousand, eight hundred, and sixty-nine dollars ($11,869.00) per month, or one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, since his termination to judgment; two years of front pay in the amount of one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, or two hundred, eighty four thou thousand, eight hundred, and forty dollars ($284,840.00); damages for emotional distress and mental anguish to be determined at trial; prejudgment interest and post judgment interest at a rate of nine percent (9%) per annum; reasonable punitive damages; attorney's fees and costs; and any other relief that the Court deems just and proper.

## COUNT II – DISCRIMINATION UNDER MHRA § 213.055.1(a) BY IBT

8

Plaintiff incorporates, by reference, each and every allegation set forth in every preceding paragraph and states further:

62. Plaintiff is a Jordanian Muslim.

63. Plaintiff was a Captain with five years employment experience at GoJet and had seniority over probationary employee Byron Hernandez.

64. Plaintiff was terminated for an incident, while off company premises or property, while off-duty, in which he was subjected to extreme, insulting, and deliberately provocative taunts about his race, ethnicity, the clothes he was wearing, and his sexuality.

65. Plaintiff was acting outside of the course and scope of his employment.

66. GoJet did not take into consideration the racial and religious humiliation when terminating an employee with no record of warnings for conduct.

67. IBT did not adequately represent Plaintiff in his relationship with GoJet by not seeking resolution on Plaintiff's behalf.

68. IBT did deny Plaintiff's request for a grievance and declined to aid Plaintiff in his acquisition of other employment.

69. Plaintiff's race, religion, color, and national origin was a contributing factor in Defendants' discrimination against Plaintiff in that his compensation, terms, conditions, or privileges of employment, were terminated.

70. Plaintiff's race, religion, color, and national origin was a contributing factor in that Defendants' have limited, segregated, or classified Plaintiff and have deprived or tended to have deprived Plaintiff of employment opportunities or otherwise adversely affected his status as an employee by terminating him without cause.

71. Plaintiff is a member of a protected class and at all times during this action

9

performed his tasks in a manner that met Defendants' expectations. Plaintiff has been segregated, isolated, and classified separately by Defendants due to his race, religion, color, and national origin.

**WHEREFORE**, Plaintiff prays for damages in the form of back pay in the amount of eleven thousand, eight hundred, and sixty-nine dollars ($11,869.00) per month, or one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, since his termination to judgment; two years of front pay in the amount of one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, or two hundred, eighty four thou thousand, eight hundred, and forty dollars ($284,840.00); reimbursement for five years of IBT union dues; damages for emotional distress and mental anguish to be determined at trial; prejudgment interest and post judgment interest at a rate of nine percent (9%) per annum; reasonable punitive damages; attorney's fees and costs; and any other relief that the Court deems just and proper.

## COUNT III – DISCRIMINATION UNDER MHRA § 213.055.1(a) BY GOJET

Plaintiff incorporates, by reference, each and every allegation set forth in every preceding paragraph and states further:

72. Plaintiff is a Jordanian Muslim.

73. Plaintiff was a Captain with five years employment experience at GoJet and had seniority over probationary employee Byron Hernandez.

74. Plaintiff was terminated for an incident, while off company premises or property, while off-duty, in which he was subjected to extreme, insulting, and deliberately provocative taunts about his race, ethnicity, the clothes he was wearing, and his sexuality.

75. Plaintiff was acting outside of the course and scope of his employment.

76.     GoJet did not take into consideration the racial and religious humiliation when terminating an employee with no record of warnings for conduct.

77.     Plaintiff's race, religion, color, and national origin was a contributing factor in Defendants' discrimination against Plaintiff in that his compensation, terms, conditions, or privileges of employment, were terminated.

78.     Plaintiff's race, religion, color, and national origin was a contributing factor in that Defendants' have limited, segregated, or classified Plaintiff and have deprived or tended to have deprived Plaintiff of employment opportunities or otherwise adversely affected his status as an employee by terminating him without cause.

79.     Plaintiff is a member of a protected class and at all times during this action performed his tasks in a manner that met Defendants' expectations.   Plaintiff has been segregated, isolated, and classified separately by Defendants due to his race, religion, color, and national origin.

**WHEREFORE**, Plaintiff prays for damages in the form of back pay in the amount of eleven thousand, eight hundred, and sixty-nine dollars ($11,869.00) per month, or one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, since his termination to judgment; two years of front pay in the amount of one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, or two hundred, eighty four thou thousand, eight hundred, and forty dollars ($284,840.00); damages for emotional distress and mental anguish to be determined at trial; prejudgment interest and post judgment interest at a rate of nine percent (9%) per annum; reasonable punitive damages; attorney's fees and costs; and any other relief that the Court deems just and proper.

## COUNT IV – DISCRIMINATION UNDER MHRA § 213.055.1(a) BY IBT

11

Plaintiff incorporates, by reference, each and every allegation set forth in every preceding paragraph and states further:

80.     Plaintiff is a Jordanian Muslim.

81.     Plaintiff was a Captain with five years employment experience at GoJet and had seniority over probationary employee Byron Hernandez.

82.     Plaintiff was terminated for an incident, while off company premises or property, while off-duty, in which he was subjected to extreme, insulting, and deliberately provocative taunts about his race, ethnicity, the clothes he was wearing, and his sexuality.

83.     Plaintiff was acting outside of the course and scope of his employment.

84.     GoJet did not take into consideration the racial and religious humiliation when terminating an employee with no record of warnings for conduct.

85.     IBT did not adequately represent Plaintiff in his relationship with GoJet by not seeking resolution on Plaintiff's behalf.

86.     IBT did deny Plaintiff's request for a grievance and declined to aid Plaintiff in his acquisition of other employment.

87.     Plaintiff's race, religion, color, and national origin was a contributing factor in Defendants' discrimination against Plaintiff in that his compensation, terms, conditions, or privileges of employment, were terminated.

88.     Plaintiff's race, religion, color, and national origin was a contributing factor in that Defendants' have limited, segregated, or classified Plaintiff and have deprived or tended to have deprived Plaintiff of employment opportunities or otherwise adversely affected his status as an employee by terminating him without cause.

89.     Plaintiff is a member of a protected class and at all times during this action

12

performed his tasks in a manner that met Defendants' expectations.   Plaintiff has been segregated, isolated, and classified separately by Defendants due to his race, religion, color, and national origin.

**WHEREFORE**, Plaintiff prays for damages in the form of back pay in the amount of eleven thousand, eight hundred, and sixty-nine dollars ($11,869.00) per month, or one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, since his termination to judgment; two years of front pay in the amount of one-hundred forty two thousand, four hundred, and twenty dollars ($142,420.00) per year, or two hundred, eighty four thou thousand, eight hundred, and forty dollars ($284,840.00); reimbursement for five years of IBT union dues; damages for emotional distress and mental anguish to be determined at trial; prejudgment interest and post judgment interest at a rate of nine percent (9%) per annum; reasonable punitive damages; attorney's fees and costs; and any other relief that the Court deems just and proper.

Respectfully Submitted,

Alaa Almoghrabi
13741 W. 138th Street, apt 101
Olathe, KS 66062
*Pro Se*