UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ALAA ALMOGHRABI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-00507-AGF |
| | ) | |
| GOJET AIRLINES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of Defendants GoJet Airlines, LLC

("GoJet") and International Brotherhood of Teamsters Local Union 618 ("IBT") for

summary judgment. Plaintiff Alaa Almoghrabi, a Jordanian Muslim, alleges that GoJet

terminated him based on his race, color, religion, and national origin, in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981.

Plaintiff also sues IBT under Title VII, § 1981, and the Missouri Human Rights Act

("MHRA"),[1] Mo. Rev. Stat. §§ 213.010, et seq., for allegedly discriminating against him

based on his race, color, religion, and national origin, by failing adequately to represent

him in his dispute against GoJet. For the reasons set forth below, Defendants' motions

shall be granted.

---

[1] Plaintiff previously asserted an MHRA claim against GoJet too, but this claim was
dismissed as time-barred. (Doc. No. 47.)

## BACKGROUND

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, for purposes of the summary judgment motions, the record establishes the following. Plaintiff is a Jordanian Muslim who was born in Qatar. Plaintiff was employed by GoJet from November 19, 2007, to October 16, 2012, first as a pilot trainee and then as a pilot. IBT represents GoJet pilots as to terms and conditions of employment, and Plaintiff was a member of IBT during his employment with GoJet.

GoJet Chief Pilot Dennis Craig was responsible for hiring and termination decisions at GoJet, and he made the decision to hire Plaintiff. Plaintiff's place of birth was disclosed in his employment application, and Craig knew that Plaintiff was born in Qatar prior to hiring him. However, Craig testified that he only learned Plaintiff was Muslim after terminating Plaintiff's employment. Plaintiff completed his training and became a first officer on March 3, 2008, and was thereafter promoted to the position of captain on December 15, 2011.

During his employment, Plaintiff saw and was aware of GoJet's Rules of Conduct, General Operations Manual ("GOM"), and Discrimination & Harassment policies. The GOM provides that the captain "is in command of the crew from the time that they report for duties prior to departure until they are released from duty after the arrival of the last assigned flight." (Doc. No. 99 at 4.) The policies also prohibit violence in the workplace. For example, the Rules of Conduct provide that "[f]ighting and other deliberate unsafe acts are not permitted and shall be grounds for dismissal." Likewise,

the Rules of Conduct state that neglect resulting in injury to personnel and/or damage to company property and ground equipment shall be grounds for dismissal.

GoJet terminated Plaintiff's employment on October 17, 2012. GoJet asserts that its decision to terminate Plaintiff was motivated by two incidents. First, on October 3, 2012, Plaintiff made a nonstandard turn while operating a GoJet flight out of St. Louis. Plaintiff was the captain of the flight, and as he and his first officer, Ryan Hill, were preparing to pull the aircraft out of the gate for the departure, they noticed that a belt loader was too close to the aircraft. Although Plaintiff could have waited for the belt loader to move, he instead made a non-standard right turn out of the gate, using extra power to make the turn. As a result of the sharp turn, the nose wheel on the aircraft was damaged; and a jet blast blew rocks and debris onto several ramp workers on the ground, and blew a cone onto a nearby GoJet aircraft. The blast did not cause any injuries. Plaintiff and Hill were required to provide statements about the incident, and were told by St. Louis Airport Operations never to make such a right turn again. Additionally, on October 3, 2012, GoJet's Director of Operations and Craig's supervisor, Steve Briner, was informed of the incident, stated that it was an example of actions that "need[] to be stopped now," and stated that further discussion was required.

Hill was not disciplined for the October 3 incident, and Craig and Briner both testified that Plaintiff probably would not have been terminated for the October 3 incident alone, though he may have been suspended. But before investigation into this incident was complete, a second incident occurred.

On October 8, 2012, during a stop after a flight to Jacksonville, Florida, Plaintiff got into a physical altercation with his first officer, Byron Hernandez. According to Plaintiff, Hernandez mimicked Plaintiff's Arabic accent or language while calling for a cab after having dinner with Plaintiff and two flight attendants, Laura Carpento and Brianna Cummings. When the cab driver hung up, Hernandez stated to Plaintiff "I spoke your language. Why didn't the [cab driver] understand me?" Then, while waiting for the cab, Hernandez leaned close to Plaintiff and ridiculed his clothing, asking Plaintiff whether he dressed like that because he was "not from here."[2] Upset by Hernandez's comments, Plaintiff put his arm around Hernandez's shoulder and "asked him to stop." Hernandez then placed his face close to Plaintiff's and asked whether Plaintiff thought he was gay and wanted to get close to him. When Plaintiff requested that Hernandez stop his comments, Hernandez asked Plaintiff what he would do about it, after which Plaintiff pushed Hernandez. Plaintiff is physically larger than Hernandez and pushed Hernandez hard enough that Hernandez fell into a wall and onto the ground. The flight attendants then attempted to deescalate the situation, and the crew returned to the hotel.

Although Hernandez never made any physical contact with Plaintiff, Plaintiff testified that he felt threatened by Hernandez and that he was offended by Hernandez's questioning of his sexual orientation. Plaintiff admits that he could have gotten up and walked away, but he testified that he felt that pushing Hernandez away was the only way to protect himself. The altercation lasted approximately one minute. According to

---

[2]     Plaintiff was not wearing any sort of ethnic dress.

Plaintiff, following the altercation, Plaintiff told Hernandez that Hernandez had taken the joking too far.

The next morning, before departing from Jacksonville to Chicago, Hernandez asked GoJet to be removed from the remainder of the trip due to the altercation. Hernandez was relieved from duty when he arrived in Chicago and subsequently filed a workers' compensation claim relating to injuries he claimed to have sustained as a result of the October 8 incident.

On the day after the October 8 incident, Plaintiff's direct supervisor, Chicago Flight Manager Larry Balocca, called Hernandez to ask him about the incident. Hernandez reported to Balocca that Plaintiff attacked him for no reason, putting him in a headlock and pushing him. Hernandez also made a written statement about the incident to Balocca and Craig. The written statement was dated October 9, 2012 and stated that Plaintiff put Hernandez in a choke hold, threatened him, grabbed him by the shirt, and tossed him against the wall. Hernandez's statement claimed that the flight attendants had to physically step in to stop the altercation, that Plaintiff continued to taunt Hernandez in the cab ride following the altercation, and that Hernandez sustained injuries to his wrist, hand, neck, jaw, and knee.

On October 10, 2012, Craig met with Plaintiff and his IBT union shop steward, Chris Slavens, regarding the October 8 incident. Plaintiff reported that he and Hernandez were exchanging jokes when Hernandez started making jokes about his race, accent, clothes, and looks, after which Plaintiff got frustrated and pushed Hernandez. After the October 10 meeting, Craig informed Plaintiff that he was suspended pending completion

of the investigation. Plaintiff left the meeting believing that some discipline was appropriate for his conduct, such as a suspension, but he did not believe that he would be terminated.

The two flight attendants who were present during the October 8 incident also provided written statements to GoJet about the incident. In a written statement dated October 12, 2012, Carpento reported that Plaintiff "blew up out of nowhere," grabbed Hernandez by the shirt and forcefully pinned and shoved him against the wall, resulting in Hernandez's knee bleeding. She stated that the other flight attendant, Cummings, tried to break up the contact, and that Plaintiff continued to scream at Hernandez during the subsequent cab ride back to the hotel. Likewise, in her written statement also dated October 12, 2012, Cummings reported that Hernandez made a harmless joke to Plaintiff about his socks, which "really got to [Plaintiff]," and that Plaintiff "put his hands on [Hernandez] and pushed him down to his back." Cummings also stated that she stepped in and tried to separate Plaintiff and Hernandez. However, Cummings added that it was out of character for Plaintiff to simply attack Hernandez without provocation, and that she had never known Plaintiff to engage in erratic or unprofessional behavior.

Following GoJet's investigation into the October 8 incident, and after considering the four written witness statements and the interviews of Hernandez and Plaintiff, Craig made the decision to terminate Plaintiff's employment for violation of GoJet's Rules of Conduct, GOM, and Discrimination and Harassment Policy. In a letter dated October 19, 2012, Craig informed Plaintiff that his employment was terminated effective October 16,

2012.  The letter referenced both the October 3 and October 8 incidents as reasons supporting Craig's decision.

Hernandez was not disciplined for the October 8 incident.  However, both GoJet and IBT representatives testified that, if Plaintiff's allegations were true, Hernandez also violated GoJet's policies regarding harassment and fighting.

IBT Local 618 President and Business Agent, Mike Foster, requested a pilot hearing for Plaintiff under the terms of the collective bargaining agreement between GoJet and IBT.  Prior to the hearing, on October 22, 2012, Plaintiff spoke with Briner and provided the same version of events that he had provided to Craig; however, Plaintiff admitted to Briner that he made a mistake in putting his hands on Hernandez.  On October 23, 2012, Briner conducted a pilot hearing to review Craig's decision to terminate Plaintiff.  The hearing was attended by Plaintiff, Craig, Briner, Slavens, and Foster.  Plaintiff argued that he was off duty when he shoved Hernandez, and that GoJet failed to consider, as a mitigating factor, his claim that Hernandez made jokes about his race, accent, clothes, and looks.  After the hearing, Briner decided to uphold Craig's discharge decision and sent a letter to IBT stating the same.

After the hearing, IBT determined that GoJet had just cause to terminate Plaintiff's employment and decided not to appeal GoJet's decision.  On November 2, 2012, Plaintiff contacted IBT and requested that a grievance be filed for his discharge.  Slavens and Foster advised Plaintiff that because of his physical assault on Hernandez, a grievance would not be filed, and IBT sent a letter to Plaintiff confirming the same.  Plaintiff

expected IBT to try to find a solution to his discharge, to turn the discharge into a resignation,[3] or to help Plaintiff in some other form.

Plaintiff admits that Craig never said anything to Plaintiff suggesting that Plaintiff was terminated because of his national origin, religion, or race. Rather, Plaintiff believed Craig was biased because of Craig's demeanor. In his deposition, Plaintiff asserted that Craig asked him "questions in an argumentative manner that suggested he enjoyed questioning Plaintiff about his actions," and that when Craig notified Plaintiff of his termination, he appeared to speak "cheerfully and with a laugh in his voice." (Doc. No. 99 at 16.) In support of his assertion that Craig was biased, Plaintiff also argues that, during Craig's tenure as Chief Pilot, other EEOC charges have been filed by pilots against GoJet. However, Plaintiff does not provide details regarding these charges. Plaintiff further asserts that Craig has posted on social media comments about United States President Barack Obama that indicate a negative feeling about Middle Easterners and the Muslim faith.

Plaintiff further admits that Slavens and Foster were the only IBT representatives involved in his discharge from GoJet and that he did not believe that either had any bias against him because of his race, color, religion, or ethnicity. However, he states that his discrimination claim against IBT is based on his belief that IBT did not adequately represent him in his dispute with GoJet.

---

[3] The parties dispute whether Slavens and Foster advised Plaintiff to resign from GoJet, which may have avoided the placement of a termination letter in Plaintiff's employment file.

Plaintiff admits that he cannot identify any GoJet employee who physically laid hands on another employee and whose employment was not terminated. However, Plaintiff points to Hill, Hernandez, and a third GoJet pilot, Kurt Kaiser, as employees outside of his protected class who engaged in conduct of comparable seriousness but were not terminated. Plaintiff notes that Hill was not terminated for his involvement in the October 3 incident, and Hernandez was not terminated for his involvement in the October 8 incident. With respect to Kaiser, who is Caucasian, Plaintiff asserts that he heard about an incident in which Kaiser "became intoxicated, followed a bartender home and ended up in jail" but was not terminated. (Doc. No. 100 at 8.) Plaintiff does not provide any further detail regarding Kaiser or this incident.

Likewise, Plaintiff has not identified any employee for whom IBT filed a grievance after the employee was discharged for physical violence or assault. During discovery, Plaintiff identified Kaiser and two other GoJet pilots, Fernando Casillas and Adam Graybill, as similarly situated persons outside Plaintiff's protected class that were treated differently by IBT. But Plaintiff admits that Casillas was discharged for a sick call issue not involving violence, and Plaintiff has not provided evidence that Graybill was involved in any incident involving physical violence or assault. Moreover, Plaintiff does not assert that IBT filed grievances with respect to Kaiser, Casillas, or Graybill, and it is not clear in what respect Plaintiff alleges that these pilots were treated differently by IBT.

Plaintiff filed his complaint in this case pro se on March 19, 2014. On October 6, 2014, Plaintiff filed a petition under Chapter 13 in the United States Bankruptcy Court

for the District of Kansas.  In conjunction with his bankruptcy disclosures, Plaintiff was required to list all lawsuits to which he is or was a party within the preceding year. Although this lawsuit was pending, Plaintiff did not disclose this lawsuit.  However, he did declare that he had an interest in a "potential" employment discrimination lawsuit against his former employer, with an unknown estimated value.  According to Plaintiff, at the time he filed his bankruptcy petition, he was working with an attorney in connection with this lawsuit[4] and was unsure whether this lawsuit had been filed.  Based on Plaintiff's disclosures, the bankruptcy court entered an order approving Plaintiff's Chapter 13 plan.  However, on April 7, 2015, the bankruptcy trustee moved the bankruptcy court for an order revoking the order of confirmation and for conversion to Chapter 7.  Thereafter, Plaintiff filed amended schedules to disclose the existence of this lawsuit.

## ARGUMENTS OF THE PARTIES

GoJet argues that summary judgment is warranted for several reasons.  First, GoJet argues that Plaintiff is judicially estopped from bringing suit because of the contrary position taken in his bankruptcy proceeding, in which he swore under oath that he had no pending lawsuits in any court.  Second, GoJet argues that Plaintiff cannot prove a prima facie claim of discrimination under Title VII or § 1981 as a matter of law because the undisputed evidence demonstrates that Plaintiff was not meeting GoJet's

---

[4]     The original complaint in this lawsuit, filed on March 19, 2014, indicated that Plaintiff was appearing "by and through his attorney, Jonathan D. McDowell."  (Doc. No. 1 at 1.)  However, counsel did not enter an appearance on behalf of Plaintiff until August 22, 2014.  (Doc. No. 6.)

legitimate job expectations and because Plaintiff has not shown that he was treated differently than similarly situated employees outside his protected class. GoJet asserts that neither Hill nor Hernandez is similarly situated to Plaintiff, and that Plaintiff's argument that Kaiser is similarly situated is based solely on inadmissible hearsay evidence. GoJet also argues that Plaintiff's religious discrimination claim fails because he cannot show that Craig was aware of Plaintiff's religion before deciding to terminate his employment.

Next, GoJet argues that, even if Plaintiff could establish a prima facie claim of discrimination, GoJet had legitimate, non-discriminatory reasons to discharge Plaintiff, based on Plaintiff's conduct in the October 8 and October 3, 2012 incidents, and that Plaintiff has not established that GoJet's reasons were pretext for discrimination. In support of this argument, GoJet again asserts that Plaintiff has not established that he was treated differently than similarly situated employees outside his protected class. GoJet also asserts that Craig was aware of Plaintiff's race and national origin when he hired Plaintiff, and that there is a strong inference that discrimination was not a motivating factor where, as here, the same person hired and fired the plaintiff within a relatively short time. Finally, GoJet argues that Craig's alleged social media posts are inadmissible and cannot establish discriminatory animus because they were unrelated to the decision-making process.

For its part, IBT asserts that summary judgment is warranted on Plaintiff's claims because Plaintiff admitted that IBT had no discriminatory bias against him, and because IBT had legitimate, non-discriminatory reasons for its actions—based on the October 3

and October 8, 2012 incidents—which Plaintiff has not established were pretextual. Like GoJet, IBT argues that Plaintiff has not identified any similarly situated union members outside Plaintiff's protected class who were treated differently. Specifically, IBT notes that Plaintiff has not identified any member involved in physical violence or assault who was treated differently than Plaintiff.

As to GoJet's motion, Plaintiff responds that he is not judicially estopped from bringing this lawsuit because he lacked the requisite intent to deceive the courts and because any inconsistency in his pleadings was the result of inadvertence. As to both Defendants' motions, Plaintiff asserts that summary judgment is inappropriate because there are genuine issues of material fact as to whether GoJet and IBT discriminated against Plaintiff on the basis of his race, religion, national origin, and color. Plaintiff argues that Craig's "disrespectful demeanor and flat affect towards Plaintiff," as well as Craig's social media posts and the other EEOC charges filed against GoJet during Craig's tenure, constitute direct evidence of discrimination. Plaintiff further argues he has demonstrated a prima facie claim for discrimination because, other than the incidents precipitating his termination, he has no history of poor job performance. Plaintiff also argues that Hill, Hernandez, and Kaiser are similarly situated GoJet employees who were not terminated for their conduct.[5] Next, Plaintiff argues that GoJet's proffered reasons

---

[5]       Plaintiff's opposition to IBT's motion also asserts that "[t]he record shows that before Plaintiff's incident a Caucasian pilot was involved in a similar incident without receiving any disciplinary action." (Doc. No. 98 at 8.) Although Plaintiff does not name the pilot or provide any details as to the incident in which the pilot was involved, the Court presumes that Plaintiff may be referring to Kaiser, or to Casillas or Graybill, the

for terminating him are pretext for discrimination because GoJet admitted that the October 3, 2012 incident, alone, was not grounds for termination, and because Plaintiff was treated differently than Hill, Hernandez, and Kaiser. Finally, Plaintiff argues that IBT cannot rely solely on GoJet's proffered reasons for the termination as a legitimate, non-discriminatory reason for its own actions in representing Plaintiff. Therefore, Plaintiff argues that both Defendants' motions should be denied.

## DISCUSSION

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015). In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan & Sav. Co)*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted).

### Judicial Estoppel

As an initial matter, the Court rejects GoJet's argument that Plaintiff's claims are barred by judicial estoppel as a result of his bankruptcy pleadings. "A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing

---

two pilots identified by Plaintiff in discovery as similarly situated pilots treated differently by IBT.

misrepresentation to the court or perpetrating a fraud on the court." *Stallings v.*
*Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006). Although "the circumstances
under which judicial estoppel may appropriately be invoked are probably not reducible to
any general formulation of principle," courts generally consider three factors: first,
whether the party's later position is "clearly inconsistent" with its earlier position;
second, whether the party "has persuaded a court to accept its prior position so that
judicial acceptance of an inconsistent position in a later proceeding would create the
perception that either the first or the second court was misled"; and third, "whether the
party asserting inconsistent positions would derive an unfair advantage or impose an
unfair detriment on the opposing party if not estopped." *Jones v. Bob Evans Farms, Inc.*,
No. 15–2068, 2016 WL 308659, at *2 (8th Cir. Jan. 26, 2016) (citing *New Hampshire v.*
*Maine*, 532 U.S. 742, 750-51 (2001)).

"Notably, judicial estoppel does not apply when a debtor's prior position was
taken because of a good-faith mistake rather than as part of a scheme to mislead the
court." *Stallings*, 447 F.3d at 1049. Courts should not apply judicial estoppel as a result
of "[c]areless or inadvertent disclosures" but only "as an extraordinary remedy when a
party's inconsistent behavior will result in a miscarriage of justice." *Id.*

Here, the Court finds that Plaintiff's characterization of this lawsuit as a
"potential" lawsuit in his bankruptcy schedules, even though the lawsuit was already
pending, is not so clearly inconsistent as to warrant the extraordinary remedy of judicial
estoppel. Moreover, Plaintiff corrected the bankruptcy schedules while the bankruptcy
proceedings were still pending. The Court finds that any inconsistency in Plaintiff's

14

bankruptcy schedules appears to be the result of inadvertence. *Cf. Jones*, 2016 WL 308659, at *3 (finding that a debtor's failure to disclose his discrimination claim in his bankruptcy schedules was not mere inadvertence for judicial estoppel purposes when he previously failed to disclose a workers' compensation claim and was thereafter specifically warned by the bankruptcy court to include disclose all pending lawsuits).   As such, the Court will not grant GoJet's motion for summary judgment on judicial estoppel grounds.

**Title VII and § 1981 Discrimination Claims Against GoJet**

"The elements of a Title VII disparate treatment claim and a § 1981 claim are identical." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1056 (8th Cir. 1997).  To survive a motion for summary judgment on these claims, a plaintiff must show either direct evidence of discrimination or create an inference of discrimination or retaliation under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973).  *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014).  "Direct evidence of discrimination requires a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

"In the absence of direct evidence, the *McDonnell Douglas* framework applies, which requires a plaintiff to make a prima facie case of discrimination or retaliation." *Id.* To establish a prima facie case of discrimination, Plaintiff must show: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he

suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009).

"If a plaintiff satisfies this burden, the defendant then has the burden of showing a legitimate, non-discriminatory reason for the challenged action." *Shirrell*, 793 F.3d at 887. "If the defendant offers such a reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is a pretext. *Id.* "The showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee." *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 643 (8th Cir. 2008). "A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Id.*

Plaintiff argues that Craig's social media posts, the other EEOC charges filed against GoJet during Craig's tenure, and Craig's overall demeanor constitute direct evidence of discrimination by GoJet. As to the social media posts, the Court does not find that such stray political remarks, even if attributable to Craig, constitute direct evidence of discrimination. "Not every prejudiced remark made at work supports an inference of illegal employment discrimination." *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) . The Court must "carefully distinguish[] between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated

to the decisional process." *Id.* Here, Plaintiff has not shown any link between Craig's alleged social media comments and his decision to terminate Plaintiff.

As to the other EEOC charges, "[e]vidence of other employer actions is admissible when it supports an inference of discrimination," but only when the evidence "assist[s] in the development of a reasonable inference of discrimination within the context of each case's respective facts." *Bradford v. Norfolk S. Corp.*, 54 F.3d 1412, 1419 (8th Cir. 1995). Here, Plaintiff has provided no details regarding these other alleged EEOC charges or their similarity to Plaintiff's charges in order to support reasonable inference of discrimination. Likewise, Plaintiff vague description of Craig's demeanor and "flat affect" does not rise to the level of direct evidence of discrimination.

Finding an absence of direct evidence of discrimination, the Court will turn to the *McDonnell Douglas* framework. The Court agrees with GoJet that Plaintiff has failed to establish a prima facie claim of discrimination because he has failed to demonstrate that similarly situated employees outside his protected class were treated differently. Plaintiff has not identified a single employee in his position who applied physical force on a co-worker and was not fired.

Moreover, assuming without deciding that Plaintiff could establish a prima facie claim of discrimination, GoJet has shown a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff, the fact remains that Plaintiff pushed a fellow employee hard enough that he fell into a wall and onto the ground. "It is beyond question that an employee's striking of a fellow employee is a legitimate, nondiscriminatory

reason for dismissal." *Ward v. Procter & Gamble Paper Prods. Co*., 111 F.3d 558, 560 (8th Cir. 1997). "This is true regardless of whether the strike was an open-handed slap to the arm or a punch," *id.*, or as occurred here, a push to the ground. "An employer is simply not required to tolerate such behavior from its employees." *Id.*

Plaintiff argues that GoJet's reasons for terminating him were merely pretext for discrimination because GoJet admitted that the October 3, 2012 incident, alone, was not grounds for termination. But Plaintiff was not terminated for the October 3 incident alone. Rather, he was terminated because of his conduct in both the October 3 and October 8, 2012 incidents.

Plaintiff also argues that GoJet's reasons were pretext because Hernandez, Hill, and Kaiser were treated differently. But in order to prove pretext, Plaintiff must prove that these employees "were similarly situated [to Plaintiff] in all relevant respects" but were nevertheless "disciplined in different ways." *See Ward*, 111 F.3d at 560 (citation omitted). Where a plaintiff and his co-employee are "involved in the same argument," but engaged in "objectively different conduct," an employer is not obligated to treat them as substantially similar. *Id.* at 561 (holding that "[a]lthough [the plaintiff and her co-employee] were both involved in the same argument, their actions are clearly differentiated because the incident involved two separate levels of escalation"). Likewise, employees are not similarly situated when they hold different positions or different employment records. *Id; see also Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (finding that the plaintiff did not meet the burden of demonstrating pretext at the summary judgment stage where the employees involved in a

physical altercation held different positions and "engaged in different levels of physical aggression in their altercation").

Here, Plaintiff is not similarly situated to Hernandez. Although Hernandez was not disciplined for his involvement in the October 8, 2012 incident and Plaintiff was, Plaintiff and Hernandez engaged in objectively different conduct—one physical in nature and one not. Further, Plaintiff held the position of captain, with greater responsibility than first officer Hernandez. Finally, Plaintiff had at least one other disciplinary issue— the October 3 incident—in his employment record; no evidence was presented that Hernandez had any similar disciplinary issues.

Likewise, Plaintiff was not similarly situated to Hill, his first officer in the October 3 incident, who was not disciplined for that incident. Hill's involvement in the October 3 incident was also objectively different than Plaintiff's because Plaintiff, as captain, made and executed the ultimate decision to turn the aircraft. Hill also held a different position than Plaintiff, and no evidence was presented that he had any other disciplinary issues.

Finally, Plaintiff has not produced evidence demonstrating that he is similarly situated to Kaiser. Even if the story Plaintiff heard about Kaiser—that he "became intoxicated, followed a bartender home and ended up in jail"—were admissible evidence, Plaintiff has not demonstrated that Kaiser engaged in a physical altercation or that he had a similar position and employment record as Plaintiff.

For these reasons, Plaintiff's discrimination claims against GoJet fail as a matter of law.

**Title VII, § 1981, and MHRA Discrimination Claims Against IBT**

Plaintiff's discrimination claims against IBT fail for similar reasons as his claims against GoJet. "[A] plaintiff may bring an action under Title VII and the MHRA if his union, for discriminatory reasons, breaches its duty to represent him fairly in the handling of his complaints and grievances." *Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949*, 309 F.3d 1051, 1053 (8th Cir. 2002) (citing 42 U.S.C. § 2000e–2(c)(1); Mo.Rev.Stat. § 213.055.1(2)). The Court applies the same framework to Plaintiff's Title VII and § 1981 claims against IBT as it did to his claims against GoJet. *See Cadamey v. Local 682 Teamsters*, No. 4:11CV402 RWS, 2013 WL 5651327, at *4 (E.D. Mo. Oct. 15, 2013).

Plaintiff has not provided any direct evidence of discrimination by IBT. And again assuming without deciding that Plaintiff could establish a prima facie claim of discrimination, IBT has offered a legitimate, nondiscriminatory reason for failing to file a grievance on Plaintiff's behalf—it believed the grievance was without merit. There is no evidence that IBT failed to pursue the grievance as a result of Plaintiff's status in any protected class, and Plaintiff has not demonstrated that any other similarly situated members of IBT were treated differently. *See Cadamey*, 2013 WL 5651327, at *5 ("To establish his prima facie case of discrimination [the plaintiff] must show that he and [the other] union members [who were treated differently] were similarly situated in all relevant respects."). As such, IBT is entitled to summary judgment on Plaintiff's Title VII and § 1981 claims.

IBT is also entitled to summary judgment on Plaintiff's MHRA claim. "[T]he MHRA requires a plaintiff to prove: (1) the plaintiff was discriminated against with

20

respect to [his] employment or the plaintiff was discharged, (2) the plaintiff's [protected classification] was a contributing factor in the discriminatory act or discharge, and (3) the plaintiff suffered damage as a direct result." *Shirrell*, 793 F.3d at 886 (citing *Daugherty v. City of Md. Heights*, 231 S.W.3d 814, 820 (Mo. 2007)). Plaintiff has failed to present evidence that would support the conclusion that his protected status was a contributing factor in IBT's actions in representing Plaintiff in his dispute with GoJet, including IBT's election not to file a grievance on behalf of Plaintiff. The record is instead replete with evidence that IBT acted as it did as a result of Plaintiff's involvement in a physical altercation with another GoJet employee. Plaintiff argues that "[w]hile not required under the MHRA, different treatment of similarly situated employees is one way to show that race or national origin was a contributing factor to the unfair treatment." (Doc. No. 98 at 10.) But Plaintiff has not identified any such similarly situated employee. Plaintiff has not identified any employee who was treated differently by IBT after being involved a physical altercation with a co-employee.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motions for summary judgment filed by Defendants GoJet Airlines, LLC and International Brotherhood of Teamsters Local Union 618 are **GRANTED**. (Doc. Nos. 89 & 93.)

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of February, 2016.